UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UTICA LEASECO, LLC**, a Florida limited liability company, <br><br> Plaintiff, <br><br> -v- <br><br> **HYDERY CANADA LIMITED D/B/A PRINTER'S PARTS & EQUIPMENT**, a Canadian corporation, <br><br> Defendants. | Civil Action No. <br><br> Hon. <br><br> **VERIFIED COMPLAINT** |

<u>VERIFIED COMPLAINT</u>

Plaintiff Utica Leaseco, LLC ("Utica" or "Plaintiff"), by and through its undersigned counsel, hereby files this Verified Complaint against Defendant Hydery Canada Limited d/b/a Printer's Parts & Equipment ("Hydery Canada" or "Defendant"), and alleges as follows:

**PARTIES**

1.    Plaintiff Utica Leaseco, LLC ("Utica") is a Florida limited liability company, authorized to do business in Michigan, maintaining an office at 2991 S. Livernois Rd., Ste. 207, Rochester Hills, Michigan 48307. Utica has five members: David K. Levy, Levy Family Utica, LLC, Craig L. Stormer, Stormer Family Utica, LLC, and Robert Levy.

2.    David K. Levy is a natural person and citizen of the State of Michigan.

3.    Levy Family Utica, LLC is a Florida limited liability company with its principal place of business in Michigan. Levy Family Utica, LLC has five members:

      a.    David Levy is a natural person and citizen of the State of Michigan;

      b.    Ann Levy is a natural person and citizen of the State of Michigan;

4934-3690-6931 v1

    c.      Kate Levy is a natural person and citizen of the State of New York;

    d.      Jill Gilpin is a natural person and citizen of the State of Colorado; and

    e.      Allison Levy is a natural person and citizen of the State of New York.

4. Craig L. Stormer is a natural person and citizen of the State of Florida.

5. Stormer Family Utica, LLC is a Florida limited liability company with its principal place of business in Michigan. Stormer Family Utica, LLC has six members:

    a.      Craig Stormer is a natural person and citizen of the State of Florida;

    b.      Colleen Stormer is a natural person and citizen of the State of Florida;

    c.      Renate LaCroix is a natural person and citizen of the State of Michigan;

    d.      Monika Stormer is a natural person and citizen of the State of Michigan;

    e.      Brendan Stormer is a natural person and citizen of the State of Illinois; and

    f.      Conner Stormer is a natural person and citizen of the State of Michigan.

6. Robert Levy is a natural person and citizen of the State of Michigan.

7. Defendant Hydery Canada Limited, doing business as Printer's Parts & Equipment ("Hydery Canada"), is, upon information and belief, a corporation organized under the laws of Ontario, Canada with its principal place of business at 60 Howden Road, Scarborough, Ontario M1R 3E4, Canada.

8. The wrongful acts and transactions giving rise to this action occurred in whole or in part within the Eastern District of Pennsylvania, where the Equipment at issue was physically located at the time of the unauthorized sale.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because this is a civil action between a citizen of a State and a citizen or subject of a

2

4934-3690-6931 v1

foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Utica is a Florida limited liability company. Defendant Hydery Canada is a Canadian corporation and thus a citizen or subject of a foreign state.

10.    This Court has personal jurisdiction over Hydery Canada pursuant to the Pennsylvania long-arm statute, 42 Pa. C.S. § 5322(a)(1), and Fed. R. Civ. P. 4(k)(1)(A). Hydery Canada purposefully directed its activities at Pennsylvania by: (a) negotiating and executing an Equipment Sale Agreement for the purchase of printing and commercial equipment physically located at 2867 East Allegheny Avenue, Philadelphia, Pennsylvania 19134; (b) closing the sale transaction with Smith-Edwards-Dunlap Company, a Pennsylvania corporation, within this Commonwealth; and (c) arranging for the removal of that equipment from the Commonwealth. These contacts with Pennsylvania are more than sufficient to satisfy the requirements of both the Pennsylvania long-arm statute and the Due Process Clause of the United States Constitution.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, where the Equipment was located at 2867 East Allegheny Avenue, Philadelphia, Pennsylvania 19134 at the time of the unauthorized sale, and where a substantial part of Defendant's wrongful conduct occurred.

## FACTUAL BACKGROUND

### A.    Utica's Interest in the Equipment

12.    Plaintiff Utica is a lessor and secured party that purchased and holds title to commercial printing and related equipment (the "Equipment") leased to a group of co-lessees (the "Co-Lessees") pursuant to that certain Master Lease Agreement dated February 7, 2025 (the "MLA"). A true and correct copy of the MLA, including its Equipment Schedules and Riders, is attached hereto as **Exhibit A**.

4934-3690-6931 v1

13. The Co-Lessees under the MLA include, among others, Smith-Edwards-Dunlap Company, a Pennsylvania corporation ("SED"), and Southland Envelope LLC, a California limited liability company ("Southland"), each of which is a party to the MLA and holds only a leasehold interest, not ownership, in the Equipment subject thereto. The MLA was signed on behalf of the Co-Lessees by Eran Salu, who executed the MLA individually on behalf of each of the more than twenty Co-Lessee entities.

14. Under the MLA, all Co-Lessees expressly agreed that they shall not assign, delegate, transfer, or encumber any of their rights or obligations under the MLA or any Schedule, their leasehold interest, or any collateral, and that they may not attempt to dispose of any of the Equipment, all without Utica's prior written consent (the "Assignment"). *See* Ex. A at 12-13 § 17. Title to all Equipment covered by the MLA and associated Schedules remains at all times with Utica as Lessor.

15. To protect its interest in the Equipment, Utica filed UCC financing statements with the appropriate governmental authorities, providing constructive notice to the world — including Hydery — of Utica's superior interest in and title to the Equipment. Any commercially reasonable buyer of used commercial equipment is obligated to conduct UCC lien searches prior to purchase.

16. Furthermore, under 13 Pa.C.S.A. § 2A305(a), a buyer or sublessee from a lessee of goods subject to an existing lease contract takes subject to that lease contract. 13 Pa.C.S.A. § 2A305(a).

17. SED and Southland held only leasehold interests under the MLA and had no power to convey greater rights than they possessed.

18. Utica's security interest survives any unauthorized sale or transfer.

4

19. Under 13 Pa.C.S.A. § 9315(a)(1), a security interest continues in collateral notwithstanding sale, lease, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest. 13 Pa.C.S.A. § 9315(a)(1).

20. Utica did not authorize any disposition of the Equipment to Hydery. Utica therefore maintains a security interest in the Equipment and in all identifiable proceeds therefrom. 13 Pa.C.S.A. § 9315(a)(2).

**B. The Unauthorized Sale of Utica's Equipment—SED to Hydery**

21. Without Utica's knowledge or consent, SED entered into a written Equipment Sale Agreement, dated April 16, 2025 (the "Sale Agreement"), with Hydery Canada for the sale of numerous items of commercial printing equipment located at SED's facility at 2867 East Allegheny Avenue, Philadelphia, Pennsylvania 19134 (the "SED Equipment"). A true and correct copy of the Sale Agreement, including its exhibits, is attached hereto as **Exhibit B**.

22. The Sale Agreement identified the purchase price for the SED Equipment as Eight Hundred and Ninety Thousand Dollars ($890,000). The Sale Agreement called for closing on or before April 24, 2025, with Hydery Canada obligated to remove the equipment from SED's facility by July 31, 2025.

23. As a Co-Lessee under the MLA, SED had no ownership interest in the Equipment whatsoever.

24. Title remained at all times with Utica, and Utica's security interest was of public record through its UCC filings.

25. A commercially reasonable buyer, upon conducting a UCC lien search before closing, would have discovered Utica's filings and known that SED's warranty of clear title was false.

4934-3690-6931 v1

26.     The Sale Agreement also provided, in Section 3(d), that Hydery Canada had "to Buyer's satisfaction inspected the Equipment and reviewed all Equipment-related records reasonably requested from Seller by Buyer" and had "reached its own independent evaluation of the Sale Transaction." This representation confirms that Hydery Canada conducted its own due diligence on the transaction.

27.     A commercially reasonable buyer of $890,000 worth of used commercial printing equipment, conducting independent due diligence, is obligated to perform UCC lien searches to verify title.

28.     Hydery Canada now acknowledges it knew of Utica's interest in the SED Equipment prior to purchasing the equipment.

29.     Utica did not consent to the Sale Agreement or the transfer of the SED Equipment to Hydery Canada. Utica has not been paid any portion of the $890,000 in proceeds. Hydery Canada therefore acquired no valid title to the SED Equipment, took subject to Utica's superior interest and perfected security interest, and holds the proceeds of any subsequent sale subject to Utica's continuing lien.

**C.     Hydery's Unauthorized Acquisition of Equipment from Southland**

30.      On information and belief, in addition to the SED transaction, Hydery Canada and/or its affiliates purchased approximately $597,300 (orderly liquidation value) worth of additional equipment from Southland Envelope LLC ("Southland") — a separate Co-Lessee under the MLA — operating from a facility in San Diego, California (the "Southland Equipment") without Utica's knowledge or consent.

31.     Like SED, Southland held only a leasehold interest in the Southland Equipment under the MLA and had no authority to sell or transfer the Equipment. Hydery therefore acquired

6

no valid title to the Southland Equipment. Utica has not consented to this transfer, has not been paid any of the proceeds of this sale, and has not released its interest in the Southland Equipment.

### D.    Hydery's Disposition of the Equipment and Failure to Pay

32.    Following the unauthorized acquisitions, Hydery confirmed to Utica that it had already sold the Equipment it acquired from the Co-Lessees, and that it expected the Co-Lessees to pay Utica from the sale proceeds. The Co-Lessees received the money upon information and belief but no such payment was ever made to Utica.

33.    Hydery has neither returned any of the Equipment to Utica nor compensated Utica for its value, despite formal written demand by Utica's counsel dated May 1, 2026. A true and correct copy of the Demand Letter, including its exhibits, is attached hereto as **Exhibit C**.

### E.    Hydery Is Not a Buyer in the Ordinary Course of Business

34.    Hydery cannot claim protection as a "buyer in the ordinary course of business" under the UCC. *See* 13 Pa.C.S.A. § 1201(b)(9).

35.    Utica's UCC financing statements were public record prior to Hydery's purchase, providing constructive notice to any buyer of Utica's superior interest. A commercially reasonable buyer of $890,000 worth of used commercial printing equipment is unquestionably obligated to conduct UCC lien searches prior to closing.

36.    Hydery's failure to conduct such searches or its decision to proceed despite constructive notice defeats any good-faith defense.

37.    The UCC imposes an obligation of good faith, defined as honesty in fact and the observance of reasonable commercial standards of fair dealing, on all commercial transactions. 13 Pa.C.S.A. §§ 1201(b)(20), 1304. Hydery Canada's own representations in the Sale Agreement confirm that it conducted independent evaluation and due diligence. A commercially reasonable

4934-3690-6931 v1

buyer conducting independent evaluation of a transaction of this scale is obligated to verify title. Hydery either did not do so, which is commercially unreasonable, or it did and chose to ignore what it found.

38.    Under UCC Article 2A, a buyer from a lessee takes subject to the existing lease contract. 13 Pa.C.S.A. § 2A305(a). SED and Southland lacked title and lacked authority under the MLA to transfer or sell the Equipment, so Hydery took the Equipment subject to Utica's superior interest and perfected security interest.

## COUNTS

### COUNT I — CONVERSION
### (Against Hydery Canada Limited)

39.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

40.    At all relevant times, Utica was the owner and holder of a superior interest in the SED Equipment and the Southland Equipment. Title to the Equipment remained with Utica as Lessor under the MLA at all times, and Utica held a perfected security interest in the Equipment evidenced by its UCC filings of public record.

41.    Hydery Canada purchased the SED Equipment for $890,000 from SED on or about April 16, 2025, and purchased the Southland Equipment from Southland, without Utica's knowledge or consent. SED and Southland lacked any authority to sell or transfer the Equipment under the MLA.

42.    By purchasing Equipment to which SED and Southland had no right to sell, by failing to conduct commercially reasonable due diligence to verify title, and by thereafter selling, transferring, or otherwise disposing of the Equipment, Hydery Canada intentionally and without

8

Docusign Envelope ID: 6C311ABE-6ACF-84AF-8209-05C2BFB619DD

authorization exercised dominion and control over Utica's property in a manner inconsistent with Utica's rights as owner and superior interest holder.

43. Hydery Canada's conduct constitutes common law conversion of Utica's property under Pennsylvania law.

44. Utica had a property interest in the Equipment.

45. Hydery Canada intentionally interfered with that interest by acquiring and disposing of the Equipment without authorization.

46. Hydery Canada's interference constituted a deprivation of Utica's property rights.

47. Utica has suffered and continues to suffer damages as a result.

48. As a direct and proximate result of Hydery Canada's conversion, Utica has suffered damages in amounts to be proven at trial, which include at a minimum: (a) $890,000, representing the purchase price paid for the SED Equipment, all of which properly belonged to Utica, as well as any amounts received by Hydery Canada upon the subsequent resale of that Equipment; and (b) additional amounts representing the value of the Southland Equipment (approximately $597,300 at orderly liquidation value), and all proceeds received by Hydery Canada upon the resale of that Equipment.

## COUNT II — UNJUST ENRICHMENT
### (Against Hydery Canada Limited)

49. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

50. Hydery Canada received and retained a benefit, namely, the SED Equipment, the Southland Equipment, and/or the proceeds from the subsequent resale of that Equipment, that rightfully belongs to Utica.

9

4934-3690-6931 v1

51.     Hydery Canada's retention of the Equipment and/or its proceeds was at Utica's expense, as Utica's superior interest in the Equipment predated and took priority over any interest of SED and Southland in the Equipment.

52.     Under the circumstances, including the falsity of SED's title warranty and Hydery's failure to conduct commercially reasonable due diligence, it would be inequitable and unjust to allow Hydery Canada to retain the benefit conferred upon it through the unauthorized acquisition and subsequent sale of Utica's Equipment.

53.     Utica is entitled to restitution from Hydery Canada in an amount equal to the full value of the Equipment at the time of its unauthorized acquisition and all proceeds received by Hydery Canada upon any resale or other disposition.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Utica Leaseco, LLC respectfully requests that this Court enter judgment in its favor and against Defendant Hydery Canada Limited d/b/a Printer's Parts & Equipment as follows:

   a. Compensatory damages in an amount to be proven at trial, which are believed to include at minimum $890,000 representing the purchase price paid for the SED Equipment, plus additional amounts representing the value of the Southland Equipment (approximately $597,300 at orderly liquidation value), together with all proceeds received by Defendant upon any subsequent resale or disposition of any of the Equipment, and all additional amounts necessary to make Utica whole;

   b. Restitution of all amounts by which Defendant was unjustly enriched at Utica's expense;

   c. An order directing Defendant to immediately return to Utica any and all Equipment still in its possession, custody, or control, free and clear of all liens and encumbrances;

   d. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

   e. Reasonable attorneys' fees and costs to the extent permitted by law or agreement;

10

4934-3690-6931 v1

f.  Such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff Utica Leaseco, LLC hereby demands a trial by jury on all issues so triable.

Dated: June 25, 2026                      Respectfully submitted,

*/s/  Mathieu J. Shapiro*
Mathieu J. Shapiro
Melissa M. Blanco
**OBERMAYER REBMANN**
    **MAXWELL & HIPPEL LLP**
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
(215) 665-3014
mathieu.shapiro@obermayer.com
melissa.blanco@obermayer.com
Counsel for Plaintiff


*/s/ Louis F. Ronayne*
Louis F. Ronayne (P81877) (Application for
Admission *Pro Hac Vice* forthcoming)
Jailah D. Emerson (P84550) (Application for
Admission *Pro Hac Vice* forthcoming)
Julia S. Moran (P87914) (Application for
Admission *Pro Hac Vice* forthcoming)
**VARNUM LLP**
101 N Main St Suite 525
Ann Arbor, MI 48104
(248) 567-7879
lfronayne@varnumlaw.com
jdemerson@varnumlaw.com
jsmoran@varnumlaw.com
Co-Counsel for Plaintiff

4934-3690-6931 v1

## VERIFICATION

I, Renate LaCroix , Plaintiff, verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Signed by:

Renate LaCroix

CE175F3472584AB...

Print Name: Renate LaCroix

Title:  President, Utica Leaseco, LLC

Date: 6/25/2026 | 12:46 PM EDT

12

4934-3690-6931 v1